IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

           Plaintiff,

vs.                                     No. 05-40062-01-SAC

KELLY A. IRBY,

           Defendant.

MEMORANDUM AND ORDER

        This case comes before the court on a motion to suppress filed by defendant Kelly Irby, who challenges the legality of the initial stop of a vehicle in which he was riding.  After the government responded, an evidentiary hearing was held, at which time the court took this motion under advisement.  During the hearing, defense counsel requested and received additional days in which to brief Kansas law, but later notified the court that he had found nothing relevant.  Having reviewed the original briefs, the evidence admitted at the evidentiary hearing, and the relevant law, the court is ready to rule.

**Facts**

        On April 4, 2005, at approximately 9:45 a.m., Kansas Highway Patrol Trooper Lytton was westbound on I-70 when he noticed that Sergeant Schneider

of the Russell County Sheriff's Department had a vehicle stopped on the shoulder of the eastbound lanes.  Sergeant Schneider's patrol car had its lights activated and was parked on the right shoulder of the roadway immediately adjacent to the right lane of travel.  Trooper Lytton decided to check on Sergeant Schneider, so slowed down, then turned around in the median.

As he pulled out of the median and into the left-hand lane of eastbound I-70, he observed a blue Dodge Caravan traveling eastbound in front of him in the right-hand lane.  This is the vehicle in which defendant was a passenger. As Trooper Lytton accelerated to assist Sergeant Schneider, he gained ground on the Caravan.  Approximately two miles after pulling into the eastbound lane, Trooper Lytton reached his closest point to the Caravan, which was approximately two or three seconds behind it.  Trooper Lytton then slowed to approximately 65 miles per hour and maintained his position in the left hand lane of eastbound I-70, approximately 200 yards behind the Caravan.  No vehicles were between them. The Caravan maintained its position in the right hand lane as it passed the stationary sheriff's vehicle on the shoulder of the road.  Believing that the Caravan could and should have changed into the left lane, Trooper Lytton decided to stop the Caravan for failing to give a lane to a stationary authorized emergency vehicle.  *See* K.S.A. § 8-1530(b)(1).  The stop was made a mile or two later.

2

Trooper Lytton approached the passenger side of the vehicle where defendant Kelly Irby was sleeping in the passenger seat.  He knocked on the passenger window, waking the defendant who opened the window.  When Trooper Lytton stated the reason for the stop and asked for a driver's license, he immediately smelled a strong odor of raw marijuana coming from the interior of the vehicle.  He testified that the odor was so strong that it made him stutter, and  was the strongest he had ever smelled in a vehicle.  Trooper Lytton believed, based upon the odor, that there was a large amount of marijuana in the vehicle and that the odor constituted probable cause to search the vehicle.  He immediately ordered both defendants to exit the vehicle, handcuffed them, told them this was for his safety, and had them stand in the ditch.

Sergeant Schneider then arrived, having terminated his stop.  At Trooper Lytton's request, Sergeant Schneider sniffed the vehicle and also detected a "really strong odor" of raw marijuana.[1] Trooper Lytton then searched the Caravan and found several large bags full of raw marijuana.

---

[1]Sergeant Schneider then spoke to defendant, pre-Miranda, and said "We can smell raw marijuana."  Defendant replied:  "Anybody could."  No suppression motion has been filed regarding this statement.  Instead, defendant requested during the evidentiary hearing that the court rule on the admissibility of this statement at trial.  The court responded that defendant should file a motion in limine at the appropriate time prior to trial.

**Initial stop**

Defendant Irby challenges the initial stop of the vehicle. The sole assertion made in Irby's motion is that the statute the trooper allegedly relied upon in stopping the vehicle, KSA § 8-1530, was not violated and that a mistake of law by the trooper is insufficient to justify the initial stop.

For persons driving on a highway such as I-70, the relevant statute provides in relevant part:

> (b) The driver of a motor vehicle upon approaching a stationary authorized emergency vehicle, when the authorized emergency vehicle is making use of visual signals meeting the requirements of K.S.A. 8-1720, and amendments thereto, or subsection (d) of K.S.A. 8-1722, and amendments thereto, shall ... proceed with due caution and, if possible and with due regard to the road, weather and traffic conditions, shall change lanes into a lane that is not adjacent to that of the stationary authorized emergency vehicle.
> (2) ... if ... it is not possible to change lanes or if to do so would be unsafe, the driver shall proceed with due caution, reduce the speed of the motor vehicle and maintain a safe speed for the road, weather and traffic conditions.

KS ST § 8-1530(b)(1).

Sergeant Schneider testified that his vehicle is an authorized emergency vehicle. Both Sergeant Schneider and Trooper Lytton testified that at the time the Caravan passed Sergeant Schneider, Schneider's vehicle was stationary on the right shoulder of I-70, using its visual signals. The sole testimony was that those signals

4

meet the requirements of the relevant statutes, and that the vehicle in which

defendant rode remained in the lane adjacent to the one Sergeant Schneider's

vehicle was in.  Apparently, defendant's challenge to the stop is limited to whether

the trooper erroneously concluded that the vehicle violated the statute by failing to

change lanes.[2]

Whether or not the record establishes a violation of  KSA § 8-1530 is

not the relevant inquiry.  *See United States v. Tibbetts*,  396 F.3d 1132, 1137 (10th

Cir. 2005).  Instead, this court must determine whether Trooper Lytton had

reasonable suspicion of a violation.  *See id.*; *United States v. Vercher*, 358 F.3d

1257, 1263 (10th Cir. 2004).  Under the Fourth Amendment, this court's inquiry is

whether Trooper Lytton had a reasonable articulable suspicion of a violation of

Kansas's "give a lane" law in light of the facts as Trooper Lytton observed them,

or whether Trooper Lytton simply misunderstood the law.  *See Tibbetts*, 396 F.3d

at 1137 (finding the validity of a traffic stop turns on whether the officer had

reasonable suspicion that the motorist violated any one of the multitude of

applicable traffic and equipment regulations of the jurisdiction); *See e.g., United*

*States v. Mesa-Roche*, 288 F. Supp.2d 1172, 1183 (D. Kan. 2003) (finding an

---

[2]Although defendant's brief fails to specify the relevant issue, defense counsel commented at the evidentiary hearing that the relative position of Trooper Lytton's vehicle to defendant's vehicle is the crucial issue here.

officer  mistaken in believing that a traffic infraction occurred under K.S.A. 8-1530, but had reasonable suspicion that  a traffic violation was being committed, satisfying the Fourth Amendment requirement of "some minimal level of objective justification" for making the stop.)

When evaluating the issue of the reasonableness of the traffic stop under the Fourth Amendment, this court first determines how Kansas courts would interpret this statute in like circumstances.  *United States v. DeGasso*, 369 F.3d 1139, 1145-46 (10th Cir. 2004).  In construing statutes, Kansas courts look first to the plain language of the statute, and only when the language is ambiguous do they seek guidance from legislative history or policy considerations.  *See State v. Walker*, __ P.3d __, 2005 WL 3334299, *8 ( Dec. 9, 2005).  Generally, criminal statutes are strictly construed in favor of the accused, which means that words are given their ordinary meaning and any reasonable doubt about the meaning is decided in favor of the accused.  *State v. McCurry*, 279 Kan. 118, 121, 105 P.3d 1247 (2003).  Further,  Kansas courts construe statutes to avoid unreasonable results, based upon the presumption that the legislature does not intend to enact useless or meaningless legislation.  *See State v. Deffebaugh*, 277 Kan. 720, 722 (2004).  The rule of strict construction is subordinate to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent.

*McCurry*, 279 Kan. at 121.

Few Kansas cases have examined this statute, and those which have are not particularly helpful.  Nonetheless, the court believes that Kansas courts would find the language of KSA § 8-1530 to be clear and unambiguous.  It requires a driver on a highway such as I-70, upon approaching a stationary authorized emergency vehicle with its lights on, to move out of the lane adjacent to the emergency vehicle where a lane change is safe and prudent, in the exercise of reasonable caution.  If such a lane change is not safe or prudent, in the exercise of due caution, the statute requires the driver to reduce his speed.

Having interpreted the statute, the court evaluates the testimony to determine if Trooper Lytton articulated the reasonable suspicion of a violation required under the Fourth Amendment.

> Reasonable suspicion is "a particularized and objective basis" for suspecting the person stopped of criminal activity. *United States v. Cortez*, 449 U.S. 411, 417-418, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981). "A traffic stop based on an officer's incorrect but reasonable assessment of the facts does not violate the Fourth Amendment." *United States v. Chanthasouxat*, 342 F.3d 1271, 1276 (11th Cir. 2003) (citations omitted); *see also Illinois v. Rodriguez*, 497 U.S. 177, 185, 110 S. Ct. 2793, 111 L. Ed. 2d 148 (1990). The Supreme Court in Rodriguez explained that in order to satisfy the reasonableness requirement of the Fourth Amendment, what is generally demanded of "the police officer conducting a search or seizure under one of the exceptions of the warrant requirement ··· is not that they always be correct, but that they always be reasonable." *Rodriguez*, 497 U.S. at 185, 110 S. Ct. 2793.

7

*Tibbetts*, at 1138.

Trooper Lytton testified that there was no obstruction, traffic, wind or weather condition that would have rendered it unsafe or imprudent for the Caravan to have moved from the right lane to the left lane.  Although Trooper Lytton was behind the Caravan in the left lane, the two were separated by approximately 200 yards, or three seconds, at the time they passed Sergeant Schneider's vehicle. Trooper Lytton stated that he dropped back for the purpose of permitting defendant's vehicle to move into the left-hand lane, and that he believed the Caravan could safely and prudently have moved into that lane in front of him before it passed Sergeant Schneider's vehicle.   No other traffic was in the immediate vicinity, either between Trooper Lytton and the Caravan or beside the Caravan.

Sergeant Schneider additionally testified that he saw the Caravan and the patrol car pass him, that the Caravan never entered the left lane, that the patrol car was three seconds behind the Caravan, that there was no traffic in between them, and that no traffic would have prevented the Caravan from safely changing lanes.  The video tape does not show the Caravan and the patrol car passing Sergeant Schneider's vehicle, but does not reveal any road or weather condition that may have affected any decision to change lanes.  No other evidence on this

8

point was offered.

The court finds the testimony of the troopers to be credible, and further finds that Trooper Lytton articulated a reasonable suspicion of a violation of the statute.

Defendant alludes to a mistake of law, but the evidence fails to show any support for that theory. Trooper Lytton stated that he had received lots of training on this statute. He testified to his understanding of the relevant statute by stating that it required vehicles traveling on a four-lane, divided highway to move to the left lane for any emergency vehicle with its lights on, but if that were not possible, the vehicle was still to slow down and move over to the extent possible. In relating the facts of this case, Trooper Lytton used the terms "safe" and "prudent," "unsafe" and "imprudent" as he explained his belief that the Caravan violated the law by failing to change lanes. This shows the court that Trooper Lytton's belief was not that the law required the Caravan to change lanes if at all possible, but that the law required it to do so if it were safe and prudent.

Trooper Lytton has not been shown to have misunderstood the law, or to have acted upon any misunderstanding of the law. The court therefore declines defendant's invitation to determine whether the Trooper committed a reasonable mistake of fact, or an impermissible mistake of law. *See Tibbetts*, 396

9

F.3d at 1139.

   IT IS THEREFORE ORDERED that defendant's motion to suppress

(Dk. 25) is denied.

   Dated this 12th day of January, 2006, Topeka, Kansas.

       s/ Sam A. Crow
       Sam A. Crow, U.S. District Senior Judge